*[Submitting Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE: APPLE APP DEVELOPER ANTITRUST LITIGATION (PROTON/KPA) | Case No. 4:25-cv-04438-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hon. Yvonne Gonzalez Rogers |

Pursuant to this Court's Standing Order, Fed. R. Civ. P. 16 and N.D. Cal. Civil Local Rule 16-9, the parties in this action have met and conferred on certain issues and hereby submit this Joint Case Management Statement pursuant to this Court's February 25, 2026 Order (Dkt. 66).

## I.    JURISDICTION AND SERVICE

### A.  Jurisdiction

*Plaintiffs' Statement.* This Court has subject matter jurisdiction over the claims arising under the Sherman Act pursuant to 28 U.S.C. §§ 1331, and 1337(a), and supplemental jurisdiction over the claims arising under state law and foreign law in this action pursuant to 28 U.S.C. § 1367. Additionally, this Court has subject matter jurisdiction over all of Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d).[1] This Court has general personal jurisdiction over Apple because its principal place of business is in Cupertino, California. This Court has personal jurisdiction over Apple because, *inter alia*, it has agreed to submit to the exclusive jurisdiction of the courts in this District for dispute arising from the Developer Program and License Agreement.

*Apple's Statement.* This Court has subject-matter jurisdiction over the Sherman Act claims under 28 U.S.C. §§ 1331 and 1337. It has discretion to exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. Plaintiffs did not allege sufficient facts to determine whether the Court has diversity jurisdiction under 28 U.S.C. § 1332.  This Court has general

---

[1] This Court had § 1332(d)(2) subject matter jurisdiction at the time of filing because Apple is a U.S. corporation, at least one member of each putative class is a citizen of a foreign state (*e.g.*, the named non-associational plaintiffs are citizens of Switzerland (Amended Complaint ¶ 21), Korea (*id*. ¶ 40), and Japan (*id*. ¶ 47)), and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Plaintiffs did not invoke § 1332(d)(2) in the operative complaint. However, "[t]he rule in [the Ninth] [C]ircuit is clear: If facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded." *Aguirre v. Automotive Teamsters*, 633 F.2d 168, 174 (9th Cir. 1980) (internal quotation marks and citations omitted). If § 1332(d) subject matter jurisdiction is necessary for this Court to adjudicate any of Plaintiffs' claims, and if additional factual or legal allegations are necessary to establish that such jurisdiction existed at the time of filing, then Plaintiffs respectfully request leave to amend the complaint accordingly. *See Jules v. Balazs*, 2024 WL 6843565, at *2 (C.D. Cal. 2024) ("courts look to the amended complaint's allegations to determine jurisdiction, although in doing so they are evaluating the state of things at the time of the filing of the original complaint." (internal quotation marks and citations omitted)).

personal jurisdiction over Apple because it has its principal place of business in California. *See* 28 U.S.C. § 1332(c).  Apple disputes that Plaintiffs possess standing.

### B.  Service

Service was effective May 28, 2025 (Dkt. 10). No other parties remain to be served.

## II.    FACTS

***Plaintiffs' Statement.*** Apple demands that all app developers who distribute apps through the App Store execute Apple's Developer Program License Agreement every year. Bound by this contract of adhesion and related App Guidelines, developers are: (i) charged supracompetitive commissions for the privilege of distributing apps through the App Store and the use of Apple's in-app payment processing services; (ii) barred from distributing or selling iOS Apps through competing iOS App platforms; and (iii) unable to steer consumers to alternative app distribution or payment processing options. Apple used these anticompetitive policies (and others) to acquire and maintain monopoly power over the distinct markets for iOS App Distribution and iOS App Payment Processing and reap monopoly profits therefrom, all while stifling innovation and consumer choice and imposing inflated costs on app developers.

Despite multiple injunctions entered against Apple in *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.) (Dkt. 19), for substantially the same behavior and a failure to correct the same in accordance with this Court's directives, Apple continues its anticompetitive conduct. Plaintiffs, on behalf of themselves and the proposed Classes, which encompass persons or entities that sold iOS Apps through Apple's U.S. App Store storefront and elsewhere (except the China App Store storefront), seek (1) to recover the supracompetitive commissions they paid Apple for iOS App distribution and payment processing services; and (2) an injunction permanently barring Apple from engaging in further illegal, monopolistic conduct regarding iOS App distribution and payment processing services.

***Apple's Statement.*** The App Store is a platform that connects app developers with iPhone and iPad users. Apple makes its proprietary tools, technologies, and services available to developers who agree to the Developer Program License Agreement (which includes, among other things, a choice-of-law provision selecting U.S. law). Apple charges a commission on a subset of the many

billions of mostly free transactions enabled by the App Store. As Apple has demonstrated in other cases, Apple competes in two-sided transaction markets—none of which can appropriately be defined as markets for iOS App Distribution and iOS App Payment Processing. And Apple's centralized App Store model is procompetitive and benefits both developers and consumers.

Plaintiffs are foreign developers that challenge various aspects of the App Store's design. Although their precise theory of harm is unclear, Plaintiffs seek damages and injunctive relief under Sections 1, 2, and 3 of the Sherman Act; California's Unfair Competition Law; the Korean Monopoly Regulation & Fair Trade Act; the Japanese Antimonopoly Act; the Japanese Mobile Software Competition Act; and Article 709 of the Japan Civil Code.

## III.    LEGAL ISSUES

***Plaintiffs' Statement.*** In addition to the matters raised by Apple in its Court-withdrawn motion to dismiss or stay (Dkt. 66), Plaintiffs anticipate that there will be disputes concerning the following legal issues: the relevant product and geographic markets; whether Apple has market power in the U.S. Smartphone/Smartphone OS Market; whether Apple's conduct violates the Sherman Act and/or California's UCL; whether Apple's conduct violates Korea's MRFTA, Japan's AMA and/or Japan's Civil Code; whether Plaintiffs and other members of the Classes were injured by Apple's conduct; whether Plaintiffs and other members of the Classes are entitled to damages and injunctive relief.

***Apple's Statement.*** Apple has not yet answered the Consolidated Amended Complaint. Based on the limited pleading thus far, without repeating any issues listed by Plaintiffs above or in Apple's motion to dismiss (Dkt. 45), Apple anticipates additional legal issues will include: whether Plaintiffs possess constitutional, statutory, and/or prudential standing; whether Plaintiffs' proposed classes should be certified; the scope and composition of Plaintiffs' proposed classes; and the scope and appropriate form of any injunctive relief.

## IV.    MOTIONS

### A.  Prior Motions

***Proton AG's Administrative Motion to Relate Case.*** Filed on July 3, 2025 (Dkt. 31), a Related Case Order was entered on July 8, 2025 (Dkt. 33).

***Apple's Motion to Dismiss or Stay Proceedings.*** Filed on September 5, 2025 (Dkt. 45), briefing was completed on October 24, 2025 (Dkts. 54, 57). The Court stayed the case on February 25, 2025, and deemed the motion withdrawn "without prejudice to refile if appropriate." (Dkt. 66.)

***Unopposed Motion for the Appointment of Interim Co-Lead Counsel.*** Filed on November 3, 2025 (Dkt. 62), this motion was terminated by the Order staying the case (Dkt. 66).

### B.  Pending Motions

None.

### C.  Anticipated Future Motions

***Motion to Dismiss.*** Having met and conferred, Apple intends to refile its motion to dismiss and the parties intend to resubmit their prior briefing without modification for resolution by the Court (recognizing Apple's request for a stay is now moot). The parties propose to simultaneously file, at 5:00 p.m. PT on June 1, 2026, a short supplemental brief, not to exceed two pages per side, concerning the effect of the resolution of the appeal in *Epic* on the motion to dismiss.

***Class Certification.*** As discussed in Section IX, Plaintiffs intend to file a motion for class certification pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3).

***Summary Judgment & Daubert Challenges.*** The parties anticipate filing motions for summary judgment and may file motions to disqualify certain experts.

***Issue Preclusion.*** Plaintiffs anticipate seeking offensive nonmutual issue preclusion on discrete issues that were litigated in *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640-YGR.

## V.  AMENDMENT OF PLEADINGS

Plaintiffs' Amended Complaint was filed on August 8, 2025 (Dkt. 44). Plaintiffs voluntarily dismissed Plaintiffs Dan Scalise and Scalisco LLC on October 3, 2025 (Dkt. 53). Plaintiffs do not anticipate adding or dismissing other parties. Amendments to Plaintiffs' claims, and Apple's answer, depend on the resolution of Apple's motion to dismiss.

## VI.  EVIDENCE PRESERVATION

The parties certify that they have reviewed this Court's Guidelines Relating to the Discovery

of Electronically Stored Information, are aware of their obligations, and have taken appropriate steps to preserve potentially relevant evidence. The parties confirm that they have met and conferred concerning these obligations.

## VII.   DISCLOSURES

Initial disclosures have not been exchanged. The parties are discussing steps to move forward on discovery, including an ESI protocol and protective order, but have not engaged in a Rule 26(f) conference.

***Plaintiffs' Statement***. Plaintiffs have indicated their preference to engage in a Rule 26(f) conference discussion as soon as possible and, in particular, to obtain (i) discovery and expert materials produced by Apple and (ii) deposition transcripts of Apple personnel from at least *Epic* and *Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal.), consistent with Rule 26(a)(1)(A)(ii) as soon as possible. Plaintiffs reserve their rights to seek additional discovery and expert materials in other cases in which Apple has been named as a party.

***Defendants' Statement.*** Apple agrees in principle to begin the production of materials from *Epic* and *Cameron* after the entry of an appropriate ESI protocol and protective order, including prior to a ruling on a motion to dismiss. Apple has committed to negotiate an ESI protocol and protective order and to further discuss with Plaintiffs the scope of reproductions from *Epic* and *Cameron*. A Rule 26(f) conference discussion, and commencement of discovery generally, would not be appropriate until after a ruling on the motion to dismiss. The parties have agreed to file a Rule 26(f) report 30 days after a ruling on the motion to dismiss.

## VIII.   DISCOVERY

### A.  Discovery Taken to Date

No party has produced discovery as of the date of this submission.

### B.  Scope of Anticipated Discovery

***Plaintiffs' Statement.*** Plaintiffs anticipate that materials from at least *Epic* and *Cameron* will be relevant to this litigation. Plaintiffs here, however, allege additional facts beyond those alleged in *Epic* and *Cameron*, seek certification of three classes with different class periods, and assert foreign law claims, all of which will need to be explored through additional discovery.

Plaintiffs also anticipate expert discovery, including, but not limited to, industry issues, security and privacy, consumer lock-in, product markets, geographic markets, market power, and damages.

*Apple's Statement.* As described in the following section, Apple agrees in principle to begin reproducing materials from *Epic* and *Cameron*. Apple is willing to meet-and-confer at the appropriate time about reproductions from other cases, including in light of what claims (if any) survive past the motion to dismiss. Apple anticipates further discovery will be necessary with respect to Plaintiffs' proposed classes and class standing, including discovery about class representatives' typicality and adequacy, inter-class conflicts, and the extent of injury to putative class members. Apple anticipates that expert discovery may also cover the procompetitive benefits of Apple's policies, market definition, market power, competitive effects, and alleged injury and damages.

### C.  Discovery During the Pendency of Defendant's Motion to Dismiss

*Plaintiffs' Statement.* Plaintiffs propose that Apple promptly produce the discovery and expert materials it produced in *Epic* and *Cameron*, as well as the depositions of its personnel taken in those cases. *See* Fed. R. Civ. P. 1 (emphasizing "just, speedy, and inexpensive determination of every action and proceeding"). Again, Plaintiffs reserve the right to seek additional discovery, deposition transcripts, and expert materials produced or exchanged in other cases in which Apple has been named as a party.

*Apple's Statement.* Apple has agreed to negotiate an ESI protocol and protective order, among other proposed stipulations, during the pendency of the motion to dismiss that Apple anticipates renewing. Entry of an ESI protocol and protective order are necessary prerequisites to the production of any documents in this case. Apple also agrees in principle to begin reproducing materials from *Epic* and *Cameron* after the entry of an appropriate ESI protocol and protective order, including prior to a ruling on a motion to dismiss. Such productions are subject to further meet-and-confer discussions about potential exclusions and other issues (e.g., third-party confidentiality obligations) that make withholding or delaying the production of certain documents appropriate.

Production of materials from matters other than *Epic* and *Cameron* prior to a ruling on the motion to dismiss would not be appropriate or proportional to the needs of the case. For one, the motion to dismiss could obviate or narrow the need for some or all discovery. For another, not

everything produced in the other cases would be relevant given differences in the claims at issue. There are also practical challenges: The corpus of materials in some other matters involving the App Store is not settled because the matters remain in discovery, and extensive third-party productions would implicate burdensome notification obligations under the relevant protective orders.

**D.    Proposed Modifications of the Default Discovery Rules.**

The parties suggest deferring any determination on whether the default number of depositions or interrogatories should be modified until after the Court rules on the motion to dismiss and discovery is underway, so that the parties have a better understanding of whether such modifications may be appropriate.

**E.  Discovery Stipulations & Plan.**

Plaintiffs prepared an authenticity stipulation, expert stipulation, ESI protocol, and protective order and provided them to Apple for consideration on May 8, 2026. Apple is reviewing those drafts. The parties will meet and confer as necessary and will present disputes to the Court at the appropriate time.

The parties have not yet engaged in the discovery conference and plan required by Rule 26(f) given the status of Apple's motion to dismiss, although Plaintiffs have requested a discovery conference pursuant to the Rule. Apple contends that a discovery conference would be premature prior to a ruling on the motion to dismiss, particularly with respect to the subjects on which discovery may be needed. However, some of the items identified under Rule 26(f)(3) relating to the discovery plan are addressed by the proposed expert stipulation, ESI protocol, and protective order—all of which the parties have agreed to negotiate during the pendency of the motion to dismiss.

**IX.    CLASS ACTIONS**

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiffs intend to seek certification of three classes[2] for damages and injunctive relief under

---

[2] The three classes—App Developer Class, Korean App, Korean App Developer Class, and Japanese Law Class—are defined in the Amended Complaint at Paragraphs 53-57.

Fed. R. Civ. P. 23(b)(2) and (b)(3) following the close of expert discovery.  Plaintiffs anticipate that they will need 12 months for discovery and will be in a position to move for class certification no later than 3 months thereafter.

## X.   RELATED CASES

This case was related to *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.) on June 11, 2025. (Dkt. 19). On September 10, 2025, two pending actions (*Proton AG v. Apple, Inc.* and *Korean Publishers Association et al. v. Apple, Inc.*) were related and consolidated under this Master Docket as *In re Apple App Developer Antitrust Litigation (Proton/KPA)*, No. 4:25-cv-04438-YGR (N.D. Cal.). (Dkts. 33, 47).

## XI.   RELIEF

Plaintiffs, on behalf of themselves and the proposed Classes, seek (1) to recover the supra-competitive commissions they paid Apple for iOS App distribution and iOS App payment processing services; and (2) an injunction permanently barring Apple from engaging in further illegal, monopolistic conduct regarding the same. Plaintiffs seek damages (including trebling) and equitable relief against Apple for violations of the Sherman Act (15 U.S.C. §§ 1–3), Korea's Monopoly Regulation & Fair Trade Act (Act No. 20239); damages and injunctive relief for violation of Japan's Act on Prohibition of Private Monopolization and Maintenance of Fair Trade (Act No. 54) and Japan's Civil Code (Act No. 89); and restitution and injunctive relief under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq*.). Plaintiffs contend that proof at trial, largely in the form of expert testimony, will determine the amount of damages.  Apple disputes that any relief is appropriate.

## XII.   SETTLEMENT AND ADR

The parties filed their respective ADR Certifications on or before August 5, 2025 (Dkts. 38-42). No settlements have been reached.

Although the parties remain open to the possibility of settlement or participation in ADR, they believe such discussions would not likely be productive at this early stage of the litigation. The parties propose to notify the Court if and when circumstances change such that the parties are better positioned to participate in productive ADR or settlement discussions.

## XIII.   OTHER REFERENCES

At this time, the parties do not believe that this case is suitable for reference to arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV.   NARROWING OF ISSUES

### A.  Bifurcation

For the reasons stated in their respective motion to dismiss briefing, the parties dispute whether Plaintiffs' Korean and Japanese law claims should be bifurcated and stayed if they are not dismissed. Dkt. 45 at 23–24; Dkt. 57 at 15.

### B.  Production of Other Case Materials

***Plaintiffs' Statement.*** As noted above in Section VIII.C., Plaintiffs seek the production of documents, expert materials, and depositions from *Epic* and *Cameron*, again reserving their rights to seek production of documents produced or exchanged in other cases in which Apple has been named as a party. This will assist Plaintiff in evaluating the additional discovery that they require to appropriately prosecute this action without unnecessarily burdening Apple.

***Apple's Statement.*** As noted above in Section VIII.C, Apple has agreed in principle to begin reproducing materials from *Epic* and *Cameron*. Wholesale reproduction of materials from other cases would be disproportionate and premature while the motion to dismiss remains pending, but Apple is willing to discuss the responsiveness, relevance, and proportionality of such requests after resolution of the motion to dismiss.

### C.  Limiting Discovery

***Plaintiffs' Statement.*** Plaintiffs believe that the Court may be able to limit discovery based on the preclusive effect of its prior decisions on certain issues, including the anticompetitive effects of Apple's conduct. In addition, because Plaintiffs have the benefit of the *Epic* and *Cameron* proceedings, Plaintiffs expect there may be facts to which Apple may be willing to stipulate that would streamline both discovery and presentation of evidence. But Apple's attempt to bind Plaintiffs through non-mutual defensive collateral estoppel cannot succeed due to the lack of privity between Epic and Plaintiffs. *See* Dkt. 54 at 5-7.

*Apple's Statement.* Plaintiffs have not identified the issues on which they seek preclusion or the facts to which they will ask Apple to stipulate.  Apple agrees, for example, that the *Cameron* settlement precludes participation in this lawsuit by those covered by that settlement.  *See* Dkt. 45 at 8–10.  But there is no lawful basis for Plaintiffs to treat as preclusive only those portions of *Epic* that Plaintiffs agree with.  *Id.* at 14–16.  Apple is willing to meet and confer at the appropriate time about stipulations of fact or a request to deem issues precluded.

### D.  Authenticity

*Plaintiffs' Statement.* Plaintiffs believe it would be beneficial (and is commonplace) for the parties to stipulate to the authenticity of documents they have produced from their own files. Such a stipulation eliminates the need for the deposing party to obtain foundational deposition testimony to establish authenticity with respect to every document introduced at a deposition. Plaintiffs have submitted an authenticity stipulation to Apple for consideration.

*Apple's Statement.* Apple is evaluating Plaintiffs' proposed authenticity stipulation and will meet and confer with Plaintiffs concerning the need for and terms of the stipulation during the pendency of the motion to dismiss.

## XV.   SCHEDULING

Plaintiffs' proposed schedule is attached hereto as Exhibit A. Apple's proposed schedule is attached hereto as Exhibit B.

## XVI.   TRIAL

Plaintiffs request a jury trial but reserve their right to request a bench trial on all issues so triable. Plaintiffs cannot estimate how long trial will take at this time.

## XVII.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

All parties have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

## XVIII.   PROFESSIONAL CONDUCT

The parties attest that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: May 20, 2026                    Respectfully submitted,

By: */s/ Christopher L. Lebsock*          By: */s/ Julian W. Kleinbrodt*
Christopher L. Lebsock (SBN 184546)      Julian Wolfe Kleinbrodt (SBN 302085)
Michael P. Lehmann (SBN 77152)           Gibson, Dunn & Crutcher LLP
Samuel Maida (SBN 333835)                One Embarcadero Center, Suite 2600
HAUSFELD LLP                             San Francisco, CA 94111-3715
580 California Street, 12th Floor        (415) 393-8382
San Francisco, CA 94104                  jkleinbrodt@gibsondunn.com
Telephone: (415) 633-1908
Facsimile: (415) 358-4980                Cynthia Richman (*pro hac vice*)
clebsock@hausfeld.com                    Gibson, Dunn & Crutcher LLP
mlehmann@hausfeld.com                    1700 M Street, N.W.
smaida@hausfeld.com                      Washington, DC 20036-4504
                                         (202) 955-8234
Mindee J. Reuben (*pro hac vice*)        crichman@gibsondunn.com
Daniel P. Margolskee (*pro hac vice*)
HAUSFELD LLP                             Daniel Glen Swanson (SBN 116556)
325 Chestnut Street, Unit 900            Gibson, Dunn & Crutcher LLP
Philadelphia, PA 19106                   333 South Grand Avenue
Telephone: (215) 985-3270                Los Angeles, CA 90071
Facsimile: (215) 985-3271                (213) 229-7340
mreuben@hausfeld.com                     dswanson@gibsondunn.com
kberan@hausfeld.com
dmargolskee@hausfeld.com                 *Counsel for Defendant Apple, Inc.*

Scott Martin (*pro hac vice*)
Gisela (Zelly) Rosa (*pro hac vice*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com
zrosa@hausfeld.com

*Counsel for Plaintiffs Korean Publishers*
*Association, Korea Electronic Publishing*
*Association, PangSky Co., Ltd., OverX Co.,*
*Ltd., and the putative Classes*

YoungKi Rhee (*pro hac vice)*
WE THE PEOPLE LAW GROUP
Chinyang Building, 7/F
47 Kyonggidae-ro, Seodaemun-gu
Seoul, South Korea 03752
Telephone: 82-2-2285-0062
ykrhee@wethepeople.co.kr

*Counsel for Plaintiff PangSky Co., Ltd. and the putative Classes*

Byung-Joo Lee (SBN 225384)
JIHYANG LAW FIRM
Seohee Tower, 7/F
2583 Nambusunhwan-ro
Seoul, Korea 06735
Telephone: 82-2-3476-6002
Facsimile: 82-2-3476-6607
bjlee@jihyanglaw.com

*Counsel for Plaintiffs Korean Publishers Association Korea Electronic Publishing Association, OverX Co., Ltd. and the putative Classes*

Michael B. Eisenkraft (*pro hac vice*)
Benjamin F. Jackson (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street,14th Floor
New York, NY 10005
212-838-7797
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

Grace Ann Brew (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
267-479-5700
gbrew@cohenmilstein.com

Nathaniel D. Regenold (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
202-408-4600
nregenold@cohenmilstein.com

Steig D. Olson (*pro hac vice*)
David Du LeRay (*pro hac vice*)
Nicolas Vernon Siebert (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP
295 5th Avenue
New York, NY 10016
212-849-7152
steigolson@quinnemanuel.com
davidleray@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Adam B. Wolfson (SBN 262125)
Sam Stephen Stake (SBN 257916)
Emma Barton (SBN 347777)
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
adamwolfson@quinnemanuel.com
samstake@quinnemanuel.com
emmabarton@quinnemanuel.com

*Counsel for Plaintiff Proton AG and the putative Classes*

**Certification of Compliance with N.D. Cal. L.R. 5-1(i)(3)**

I hereby certify that pursuant to N.D. Cal. L.R. 5-1(i)(3), I have obtained the authorization from the above signatories to file the above-referenced document, and the above signatories concur in the filing's content.

*/s/  Christopher L. Lebsock*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF and served a copy of the foregoing upon all counsel of record via the Court's electronic filing system.

/s/ Christopher L. Lebsock