[Counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: APPLE APP DEVELOPER ANTITRUST LITIGATION (PROTON/KPA) | Case No. 25-cv-04438-YGR<br><br>JOINT STIPULATION RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION<br><br>Hon. Yvonne Gonzalez Rogers |

Plaintiffs and Defendant Apple Inc. ("Apple") (collectively "the Parties," and individually, a "Party") submit the following protocol to govern discovery of electronically stored information ("ESI") in this action. This protocol (hereinafter "Protocol" or "ESI Protocol") will serve as a supplement to the Federal Rules of Civil Procedure, this Court's guidelines for the Discovery of ESI, and any other applicable orders and rules.

## 1.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 2.    LIAISON

The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without Court intervention.

**3.      INSTANT MESSAGING AND COLLABORATION TOOLS DISCLOSURE**

For the avoidance of doubt, ESI includes, without limitation, information in electronic messaging and collaboration tools and systems, including originals and non-identical copies stored on servers, endpoints, mobile devices, removable media, and cloud services. Covered systems include Slack, Microsoft Teams, Zoom Team Chat/Zoom Chat, Google Chat, Jabber, Webex Teams/Messaging, Workplace from Meta, Microsoft Viva Engage (Yammer), Apple Messages (iMessage, SMS, MMS), WhatsApp, Signal, Telegram, Discord, any other text messaging systems, any other internal Apple communication systems, and any other cross-platform messaging tools, including integrations and bots managing or conveying work content.

To the extent work-related instant messages (e.g., Slack, Jabber, Google Chat) or text messages (e.g., SMS, iMessage) are produced for any custodian, a Party shall produce such messages in a manner that preserves the context of the communication by producing messages occurring before or after a given message pertaining to the same topic through 24-hour unitization. If a Party cannot produce a message in the above-described manner, they shall inform the other Party at the time of the production of (1) the specific items that were unable to be produced in this manner, identified by bates number; (2) the reason the Party was unable to produce the items in this manner. The Parties shall then meet and confer in good faith regarding a method of production to best preserve the context of such messages.

**4.      PRESERVATION**

The Parties have discussed their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate consistent with their obligations set forth in Federal Rule of Civil Procedure 26. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that only ESI created or received after January 9, 2007, will be preserved.

**5.      SEARCH**

The Parties agree that in responding to an initial Federal Rule of Civil Procedure 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Should either party determine that Technology Assisted Review ("TAR") is appropriate for any review of documents to be produced, in place of manual review, the Parties will negotiate an appropriate protocol. The Parties need not use a TAR protocol for review of a production they merely receive.

**Family Groups**. A "family" means a document and all other documents that are attached to it. The document to which other documents are attached is the "parent," and documents that are attached to the parent are the "children." A document family consists of the full family group of parents and their children, and their children's children (*e.g.*, if an email attaches a PowerPoint presentation, and images, videos, or spreadsheets are embedded in that presentation, the email, and PowerPoint presentation will all be part of the same document family).

The parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review and production of electronically stored information.  In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case.  The parties then shall meet and confer to reach agreement on document custodians and also shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from those custodians.  ESI, including, but not limited to electronic files and email, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes.  Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents).  The party receiving production shall consider the addition of reasonable further restrictions.  The parties shall make good faith efforts to identify appropriate email custodians and produce email on the agreed upon schedule, but reserve the right to seek email from additional email custodians identified through discovery.

**Family Groups**. The parties shall produce email attachments sequentially after the parent email. Parent-child relationships (the association between a document and its attachments) will be preserved through the production of an appropriate metadata field. If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered subject to production.

**Search-Term Reporting**. In connection with good-faith negotiations over search terms, any Party objecting to the use of a proposed search term shall provide, upon reasonable request and without waiving objections, search-term hit information for the proposed term applied to the corpus of documents to which the proposed term will be applied, including for each term: (i) total hits; (ii) family hits; and (iii) estimated post-de-duplication unique hits.

**Unsearchable ESI**. The parties agree to meet and confer about ESI that has been identified as potentially responsive and for which searching is fundamentally ineffective, including images, audio files, or otherwise unsearchable ESI documents, must be reviewed without culling that relies primarily on text. However, if unsearchable ESI is part of a responsive, non-privileged family, then the unsearchable ESI does not need to be reviewed to the extent it is already included in the family-complete production.

6.    **PRODUCTION FORMATS**

The Parties agree to image documents and produce them in ☒ PDF, ☒TIFF, ☒native and/or ☐paper or a combination thereof (check all that apply) file formats, except as otherwise provided for in this ESI Protocol. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process. Notwithstanding the foregoing and any other provision in this Protocol, a Party may produce any or all documents in native format as they exist in the ordinary course of business.

**Text Files and Encoding**. A single multi-page text file shall be provided for each document, and the filename should match the document's BegBates. Extracted text shall be provided at the document level, with one text file per document, and shall be generated directly from the native file where practicable. Where extraction is not practicable, or where the Producing Party has

a reasonable, good-faith basis to conclude that OCR text is expected to be more accurate or appropriate than extracted text because the underlying document contains redactions or because other technical considerations affect the accuracy or usability of extracted text, OCR text may be provided. Text files shall be delivered encoded in UTF-8. Text files shall not be embedded within the DAT load file. A commercially acceptable technology for optical character recognition ("OCR") shall be used.

**Metadata Fields**. Load files should include, where reasonably available, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original, with the exception of the following: BegBates, EndBates, BegAttach, EndAttach, Pages, NativeLink (for native files only), ProdVol, Custodian, All Custodians, FileType, Time Zone, Confidentiality, Redacted, and Placeholder. The metadata file shall be delimited according to the following characters:

Delimiter = ¶ (ASCII:020)

Text-Qualifier = þ (ASCII:254)

New Line = ® (ASCII:174)

Multi-value delimiter - ; (ASCII Code 059)

The Parties recognize that the fields listed in the Table of Metadata Fields and/or Table of Additional Chat/Collaboration Metadata to Be Produced When Reasonably Available may not be appropriate for production of documents from chat or collaboration platforms. The Parties may mutually agree to change, alter, or supplement the metadata that shall be produced in connection with certain documents, and the Parties agree to meet and confer in good faith concerning any such changes to the set of metadata fields to be included in load files for documents produced from particular chat or collaboration platforms.

**Load Files**. For each document, a delimited text file (DAT) containing metadata described in Exhibit A and an image load file (OPT) for PDFs and/or TIFF/JPG images shall be provided. The

text file name shall be the same as the BegBates of the document; do not include OCR or extracted text within a DAT file. The DAT file should be in Unicode (UTF-8) format.

**Images**. Images may be produced as PDFs or either single page Group IV TIFFs (300 DPI) or color JPGs. Each image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. All documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the Image File to the extent reasonably feasible.

**Native Files**.

i.      Any native files (*e.g.*, Excel and Numbers files) produced shall have a Bates-numbered slip sheet stating the documents have been produced in native format. Native files shall be produced with the extracted text and applicable metadata fields.

ii.      Spreadsheets (*e.g.*, Excel, Google Sheets and Numbers) will be produced in native format.

iii.      Presentations (*e.g.*, PowerPoint and Keynote) will be produced in native or TIFF/JPG.

iv.      Audio and video files may be produced in native format or, for good cause, by transcription in PDF or TIFF/JPG.

v.      Delimited text files (*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv) files) will be produced in native format.

vi.      For any other types of documents, the Parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. Notwithstanding any production permitted under this order in non-native format, where the production of the native file is reasonably necessary to the document's comprehension or use, a request for the native file shall not unreasonably be denied.

vii.     If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the Parties reserve the right to seek relief from the Court.

**De-duplication**.

i.     To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, de-duplicated copy of a responsive document. "Exact duplicate" shall mean documents with the identical content hash values or determined to be exact duplicates by using industry standard algorithms such as MD5, SHA-1, or SHA26 or another reliable method. "Near duplicates" may not be excluded.

ii.     De-duplication shall be applied only at the family group level and only where both the parent and children are identical across family groups; no de-duplication shall occur based on identical children where the associated parents differ or where any parent is unique.

iii.     De-duplication shall not be applied to standalone documents merely because they are duplicates of children in a family group; such standalone documents must be preserved and processed as independent documents.

iv.     A Producing Party shall de-duplicate documents across designated custodians and populate a field of data that identifies each designated custodian who had a copy of the produced document (the "Custodian" and "All Custodians" fields). Such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions.

v.     No Party shall identify and/or eliminate duplicates by manual review.

vi.     Hard-Copy Documents shall not be eliminated as duplicates of ESI nor of other responsive Hard-Copy Documents.

vii.     If a duplicate documents for a different custodian have been processed following an initial production of documents, and that custodian is included on documents already produced, the Producing Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodian" field. The overlay file shall include all custodians listed in the "All Custodians" field in prior productions and any custodians newly identified in the current supplemental production.

**Embedded Objects**. Where reasonably feasible, non-image files embedded within other documents will be extracted as separate documents and treated like attachments to the document in which they were embedded. Image files embedded within documents, such as signature blocks, need not be extracted as separate documents.

**Hyperlinked Documents**. The Parties are not required to produce hyperlinked documents linked within otherwise produced documents, including internal cloud links (*e.g.*, SharePoint, OneDrive, Google Drive, Box) and file-mount links, in the first instance. The Reviewing Party may make reasonable requests proportional to the needs of the case for hyperlinked documents within otherwise produced documents. If the Reviewing Party requests the hyperlinked document within a produced document, the Producing Party must produce that document subject to any appropriate objections. The Producing Party must begin their search for the hyperlinked documents within two business days of receiving the request. If the Producing Party objects to the search, they must communicate the nature of their objection to the other Party and the Parties will meet and confer. The Producing Party still must begin their search for the document within two business days despite objection to its production. If the Producing Party cannot locate and produce the document within three weeks of the request, the Parties will meet and confer about the status of the search.

When producing hyperlinked documents, Metadata shall to the extent reasonably available capture link-target relationships, including file IDs, link types, and resolution status, as outlined in Exhibit A.

**Compressed Files**. Compression file types (*e.g.*, .CAB, .GZ, .RAR, .TAR, .Z., .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

**No Email Threading**. Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document or ESI will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

**Chat and Collaboration Messages**. Chat/collaboration data (*e.g.*, Slack, Microsoft Teams, Zoom Chat, Google Chat, Webex, Jabber) and text messages (*e.g.*, SMS, iMessage) shall be produced in a human-readable rendering (HTML or PDF) sufficient to show message content, threads, timestamps, sender and participants, edits/deletions, reactions/emojis, attachments, and channel context. For threaded chat/collaboration conversations, any responsive hit requires production of the parent message and all replies within the agreed date range. For non-threaded/channel chat/collaboration conversations, the Producing Party shall include a reasonable context window (defined by time slice or message count) sufficient to preserve meaning (including colloquialisms, emojis, and reactions). All chat timestamps shall be normalized to UTC in metadata while capturing the original offset in a dedicated field.

**Foreign Language Documents**. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the Producing Party shall produce both the original document and all English-language versions. Nothing in this agreement shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

**Re-productions**. Notwithstanding any provisions to the contrary, documents that are re-produced in whole or in part from the production files of another litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the other matter, provided however that a Party will re-produce documents in a different format if requested by a Party and reasonably necessary to the document's comprehension or use. For the avoidance of doubt, this ESI Protocol is a forward-looking document; nothing in this Order shall require the re-production of any production previously made in any of the Actions, and this Order has no bearing on any dispute regarding a production made before it was entered.

**Production Media**. The Producing Party shall provide the production data via SFTP, CDs, DVDs, or external hard drives, or by way of other electronic transfer, as between accounts at a cloud provider (subject to prior agreement with the requesting Party), as appropriate. For any production exceeding five (5) terabytes in size, the Producing Party shall reasonably confer with the requesting

Party about the means of transmittal or production before undertaking it. The Producing Party shall encrypt the production data, and the Producing Party shall provide the password to decrypt the production data separately from the CD, DVD, external drive or SFTP to which the production data is saved. Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"), as well as the volume of the material in that production (*e.g.*, "-001," "-002"). Each piece of Production Media shall also identify: (1) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

**Transmittal Letter and Media Labeling**. Each production shall be accompanied by a transmittal letter (or cover email) stating: (a) Producing Party; (b) production date; (c) production volume identifier; (d) Bates range(s) produced; (e) confidentiality designation(s); (f) brief non-substantive description of content (*e.g.*, data, custodians, or search sets included); and (g) any password(s) required to access the media. Physical or electronic media (including secure file transfer packages) shall be labeled or titled with the Producing Party's name, production date, and volume identifier.

**Bates Numbering**. The BegBates and EndBates fields should be populated for all documents sequentially within a given document, between documents, and across the production sets. Bates numbers may contain hyphens or underscore characters but should not contain spaces. These fields should not be blank under any circumstance.

The Producing Party will brand all TIFF/JPG or PDF images in the lower right-hand corner with their corresponding Bates numbers, using a consistent font type and size. The Producing Party will brand all TIFF/JPG or PDF images in the lower left-hand corner with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its Bates numbers and confidentiality designation identified in the filename of the native file.

## 7. MOBILE AND PERSONAL COMMUNICATIONS

The Parties shall collect and produce unique, responsive communications within their possession, custody, or control using targeted, proportional methods designed to minimize intrusion

(*e.g.*, custodian- and date-bounded extractions, keyword/topic filters, targeted export utilities). Purely personal accounts/devices outside the Producing Party's possession, custody, or control are out of scope; where potentially relevant sources are identified outside the Producing Party's control, the Parties shall meet and confer regarding third-party subpoenas or other appropriate mechanisms.

**8.    REQUESTS FOR HIGH RESOLUTION OR COLOR DOCUMENTS**

**Color/High Resolution on Request**. Documents may be produced in black-and-white by default. Documents shall be produced in color where color conveys meaning. The Parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing Party shall not object if the document as originally produced is illegible or difficult to read. The producing Party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

**9.    PHASING AND PRIORITIZATION**

The Parties will phase document productions as agreed to or ordered, and after each initial tranche, the Producing Party shall continue to prioritize custodians, sources, and search sets reasonably calculated to yield the most relevant information, conferring in good faith regarding priorities.

**10.    THIRD-PARTY DISCOVERY**

**Third-Party Discovery and Sharing**. Any subpoena or document request issued to a non-party shall attach this Protocol and the operative Protective Order and request that any production be made simultaneously to all Parties. If a non-party produces materials only to one Party, the Receiving Party shall promptly reproduce those materials to all other Parties in the format received within five (5) business days of receipt. Until such reproduction, the Receiving Party shall not use the non-party materials in any filing, deposition, hearing, or expert submission. Subpoenas shall instruct third Parties to provide simultaneous service of productions to all Parties and to use the production specifications set forth in this Protocol unless otherwise agreed.

**11.     COSTS**

**Costs of Production**. Unless otherwise ordered or agreed-upon, each Producing Party shall bear its own costs of collection, processing, review, and production.

**12.     ADDITIONAL PROCESSING SPECIFICATIONS**

**Processing Time Zone**. Unless the Parties agree otherwise in writing, ESI shall be processed using Coordinated Universal Time (UTC) for the extraction and normalization of system-derived date/time metadata fields. To the extent a party requests that a producing party populate a "Time Zone" metadata field reflecting the system or custodian setting at source, the parties agree to meet and confer about the feasibility and proportionality of such a request.

**System Files**. Each Party will use its best efforts to filter out all common system files, executable files, program files, application executable files, and any other non-user created data, such as those that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." The Parties may also filter out the following files or file types:

(a) ESI affected by ransomware or malware or that otherwise has been corrupted or is unable to be processed without extraordinary efforts;

(b) Files that are zero bytes in size (i.e., do not contain content); and

(c) Other files or file types as agreed to by the Parties.

**Exception Files**. For electronically stored information that is encrypted, corrupted, unsupported, or otherwise cannot be processed for production after commercially reasonable efforts (each an "Exception File")—which may be produced as part of an otherwise responsive, non-privileged family—the Producing Party shall provide a placeholder image bearing a unique Bates number and stating the reason for exception. Upon reasonable request that specifically identifies an Exception File, the Producing Party will use reasonable efforts to locate and obtain keys necessary to enable processing and will update the requesting Party within 30 days regarding the status and feasibility of further processing.

**13.     NO WAIVER**

JOINT STIPULATION RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION                    12

Matters not addressed in this Protocol shall not be deemed waived. Rather, any such matters shall be addressed by the Parties at a later time through additional meeting and conferring, and, if necessary, submitted to the Court for resolution.

**14.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: June 19, 2026

By: /s/ *Adam B. Wolfson*
Adam B. Wolfson (SBN 262125)
Sam Stephen Stake (SBN 257916)
Emma Barton (SBN 347777)
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
adamwolfson@quinnemanuel.com
samstake@quinnemanuel.com
emmabarton@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David Du LeRay (*pro hac vice*)
Nicolas Vernon Siebert (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan LLP
295 5th Avenue
New York, NY 10016
212-849-7152
steigolson@quinnemanuel.com
davidleray@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Christopher L. Lebsock (SBN 184546)
Michael P. Lehmann (SBN 77152)
Samuel Maida (SBN 333835)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com
mlehmann@hausfeld.com

By: /s/ *Julian Wolfe Kleinbrodt*

Julian Wolfe Kleinbrodt (SBN 302085)
Gibson, Dunn & Crutcher LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8382
jkleinbrodt@gibsondunn.com

Cynthia Richman (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, DC 20036-4504
(202) 955-8234
crichman@gibsondunn.com

Daniel Glen Swanson (SBN 116556)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7340
dswanson@gibsondunn.com

*Counsel for Defendant Apple Inc.*

JOINT STIPULATION RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION          13

smaida@hausfeld.com

Mindee J. Reuben (*pro hac vice*)
Daniel P. Margolskee (*pro hac vice*)
HAUSFELD LLP
325 Chestnut Street, Unit 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
mreuben@hausfeld.com
kberan@hausfeld.com
dmargolskee@hausfeld.com

Scott Martin (*pro hac vice*)
Gisela (Zelly) Rosa (*pro hac vice*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com
zrosa@hausfeld.com

*Counsel for Plaintiffs Korean Publishers*
*Association, Korea Electronic Publishing*
*Association, PangSky Co., Ltd., OverX Co.,*
*Ltd., and the putative Classes*

YoungKi Rhee (*pro hac vice)*
WE THE PEOPLE LAW GROUP
Chinyang Building, 7/F
47 Kyonggidae-ro, Seodaemun-gu
Seoul, South Korea 03752
Telephone: 82-2-2285-0062
ykrhee@wethepeople.co.kr

*Counsel for Plaintiff PangSky Co., Ltd. and*
*the putative Classes*

Byung-Joo Lee (SBN 225384)
JIHYANG LAW FIRM
Seohee Tower, 7/F
2583 Nambusunhwan-ro
Seoul, Korea 06735
Telephone: 82-2-3476-6002
Facsimile: 82-2-3476-6607
bjlee@jihyanglaw.com

*Counsel for Plaintiffs Korean Publishers Association Korea Electronic Publishing Association, OverX Co., Ltd. and the putative Classes*

Michael B. Eisenkraft (*pro hac vice*)
Benjamin F. Jackson (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street,14th Floor
New York, NY 10005
212-838-7797
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

Grace Ann Brew (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
267-479-5700
gbrew@cohenmilstein.com

Nathaniel D. Regenold (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
202-408-4600
nregenold@cohenmilstein.com

*Counsel for Plaintiff Proton AG and the putative Classes*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: June 24, 2026

_____
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**

**TABLE OF METADATA FIELDS**

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| BegBates | Text | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndBates | Text | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Text | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Text | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Number | The number of pages for an email. | The number of pages for a document. |
| ParentDate | Date/Time(MM/DD/YYYY HH:MM:SS format) | The date of the parent document. | The date of the parent document |
| DateSent | Date/Time(MM/DD/YYYY HH:MM:SS format) | The date the email was sent. | |
| Author | Text | | The name of the author as identified by the metadata of the document. |
| From | Text | The display name of the author or sender of an email. | |

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| To | Text | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (*e.g.*, fax recipients). |
| CC | Text | The display name of the copyee(s) of a email. | |
| BCC | Text | The display name of the blind copyee(s) of an email. | |
| Subject | Text | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Text | Production custodian designated in this litigation, or non-human production data source, from which the produced file was taken | Production custodian designated in this litigation, or non-human production data source, from which the produced file was taken |
| All Custodians | Text | Custodians(s) designated in this litigation for all copies of the Document that were removed as a result of de-duplication (semi-colon delimited). | Custodian(s) designated in this litigation for all copies of the Document that were removed as a result of de-duplication (semi-colon delimited). |
| Date Created | Date/Time (MM/DD/YYYY HH:MM:SS format) | | Date document was created. |
| LastModifiedDate | Date/Time (MM/DD/YYYY HH:MM:SS format) | | The last modified date from a loose file. |
| FileName | Text | | Original file name at the point of collection |
| FileExtension | Text | | Original file extension at the point of collection |

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| All Paths | Text | Original email folder at the point of collection for every custodian (semi-colon delimited) | Original file path at the point of collection for every custodian (semi-colon delimited) |
| MD5Hash or SHA1 Hash | Text | Unique MD5 or SHA-1 hash for document. | Unique MD5 or SHA-1 hash for document. |
| TextLink | Text | Extracted/OC R text or a link to a file with the text. | Text |
| NativeLink | Text | Native file link (native files only) | |
| Title | Text | | File property Title |
| Subject | Text | | File property Subject |
| ProdVol | Text | Name of media that data was produced on. | Name of media that data was produced on. |
| FileType | Text | | Type of file (*e.g.*, Word, Excel) |
| Time Zone | Text | Time zone of data used during processing of data. | Time zone of data used during processing of data. |
| Confidentiality | Text | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. |
| Redacted | Text | "Yes" for redacted Documents; "No" for un-redacted Documents. | "Yes" for redacted Documents; "No" for un-redacted Documents. |
| Placeholder | Text | Yes/No field indicating whether a document has been produced as a placeholder image (*e.g.*, a slipsheet indicating the document was | "Yes" for documents produced as a placeholder image; "No" for documents not produced as a placeholder image. |

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| | | withheld as privileged). | |

**TABLE OF ADDITIONAL CHAT/COLLABORATION METADATA
TO BE PRODUCED WHEN REASONABLY AVAILABLE**

The Parties will meet and confer as needed to resolve issues with metadata, such as unavailability or differences of fields.

| Field Name | Field Format | Description (Chat/Collaboration) |
|---|---|---|
| Platform | Text | Chat/collaboration platform (*e.g.*, Slack, Microsoft Teams, Google Chat). |
| Tenant/Workspace/TeamID | Text | Unique identifier for the tenant/workspace/team in the platform. |
| ChannelID | Text | Unique identifier for the channel/space/conversation. |
| Channel Name | Text | Human-readable channel or space name. |
| Channel Type | Text | Channel type (*e.g.*, public, private, DM, multi-party DM). |
| Channel Status | Text | Status events for the channel (*e.g.*, created, deleted, archived) with applicable timestamps if available. |
| MessageID | Text | Unique identifier for the message. |
| ThreadID | Text | Unique identifier for the thread the message belongs to (if threaded). |
| ParentMessageID | Text | Unique identifier for the parent message when the message is a reply. |
| Version Indicator (Edits) | Text | Versioning indicator or edit sequence number if provided by the platform. |
| SenderUserID | Text | Unique identifier for the message sender. |
| Sender Display Name | Text | Display name for the message sender at time of message. |
| Sender Email | Text | Email address of the message sender (where available). |
| Participant List | Multi-value Text | List of participants in the message or conversation context (multi-value). |

| Field Name | Field Format | Description (Chat/Collaboration) |
|---|---|---|
| Channel Membership Snapshot as of Message Date | Multi-value Text | Membership list as of the message timestamp (snapshot), if preserved by the platform/collection. |
| Message Timestamp (UTC) | Date/Time (ISO 8601 UTC) | Message timestamp in UTC. |
| Original Time Zone Offset | Text | Original sender/client time zone offset (*e.g.*, -0700) if captured. |
| Edit Flag | Boolean | Indicates whether the message was edited. |
| Deletion Flag | Boolean | Indicates whether the message or part of it was deleted. |
| Reactions/Emojis | Structured Multi-value | Reaction events including actor, reaction type/emoji, and timestamp (may be multi-valued). |
| Attachment File IDs | Multi-value Text | Identifiers of files attached to the message (multi-value). |
| Attachment Linkage to Message | Text | Linking or join key that associates attachments to the specific message. |
| Hyperlink Target Identifier | Text | Identifier of the hyperlink target (*e.g.*, doc ID, drive file ID, internal object ID). |
| Hyperlink Link Type | Text | Link type (*e.g.*, internal cloud, external URL, file-mount). |
| Hyperlink Resolution Status | Text | Resolution status for links at collection time (*e.g.*, resolved, not found, access denied). |
| Bot/App Indicator | Boolean | Indicates whether the sender or message was generated by a bot/app/integration. |
| External Collaborator/Guest Indicator | Boolean | Indicates presence or participation of external/guest users in the message/channel. |
| Retention/Legal Hold Flags | Multi-value Text | Applicable retention labels/policies or legal hold flags in effect at message time. |